NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANEESHA SCOTT,                        :
                                      :
              Plaintiff,              :        **Hon. Dennis M. Cavanaugh**
                                      :
       v.                             :          **OPINION**
                                      :
CORRECTIONAL MEDICAL                  :        Civ. No. 09-4730 (DMC) (JAD)
SERVICES, et al.,                     :
                                      :
              Defendants.             :
                                      :

DENNIS M. CAVANAUGH, U.S.D.J.:

       This matter comes before the Court upon motion of Defendants the New Jersey Department

of Corrections ("NJDOC"), NJDOC Commissioner George W. Hayman, Michelle R. Ricci, Alfred

N. Kandell, James Drumm, Alan Martin, M.D., Debra Carpella, William Hauck (collectively, the

"NJDOC Defendants"), as well as against Correctional Medical Services, Inc. ("CMS"), Darlene

Sexton, Kathleen Skinner, Regina Jones, Donique Ivery, Barbara Brown, John/Jane Doe #1,

John/Jane Doe #2, John/Jane Does #3-20 and XYZ Corporations #1-10 ("Med. Defendants")

(collectively, "Defendants").  Defendants move to dismiss the Complaint of Aneesha Scott

("Plaintiff") pursuant to Rule 12(b)(6) and for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure.  Plaintiff alleges four counts against Defendants:  violations of 42 U.S.C.

§ 1983  (Count I);  violations of the New Jersey Constitution and the New Jersey Civil Rights Act

(Count II);   medical malpractice   (Count III); violation of the New Jersey Law Against

Discrimination (Count IV).

No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' motion to dismiss is **granted** with respect to Plaintiff's federal claims.

## I. **BACKGROUND**[1]

Plaintiff brings claims of civil rights violations under the Federal and New Jersey Constitutions, the United States Civil Rights Act, the New Jersey Civil Rights Act, the New Jersey Law Against Discrimination, and common law causes of action founded on medical malpractice. Complaint ¶ 1. Specifically, Plaintiff asserts that the Defendants were "deliberately indifferent" to her obvious and serious medical needs, and inexcusably delayed in providing treatment for lumps found in her left breast. Id. ¶ 2.

### A. FACTS

At the time this lawsuit was filed, Plaintiff was serving a four to five year prison sentence. Id. ¶ 27. Plaintiff commenced her custodial sentence within the State Prison system on or about September 22, 2006 and was initially placed in the "Women's Prison," at the Edna Mahan Correctional Facility ("EMCF"). Id. ¶ 28.

Plaintiff was transferred to the New Jersey State Prison ("NJSP") on or about March 14, 2007, where four months later she discovered a lump in her left breast while conducting a routine self-examination. Id. ¶¶ 29, 34, 35. Upon discovery, Plaintiff had a same day "Nurse Sick Call" with Defendant Nurse Barbara Brown at the Trenton State Prison, who confirmed the existence of

---

[1] The facts in the Background section have been taken from the parties' submissions.

the lump. Id. ¶ 36. Nurse Brown submitted a request that Plaintiff be seen by a doctor "within seven days." Id.

Although Plaintiff was seen by various medical personnel at least eight times between July 23, 2007 and October 18, 2007, it appears that Plaintiff did not receive a consult or a visit from a doctor to discuss the lump until three months after the initial nurse examination. Id. ¶ 37. It is not clear whether Plaintiff raised the issue of the lump to any of the medical professionals she did see. See Def.'s Statement of Material Facts ¶ 18, ECF No. 35-2.

Plaintiff alleges that on November 5, 2007, she feigned chest pains in an effort to get immediate medical attention, as her previous verbal and written requests to see a doctor had been ignored. Id. ¶ 38. Plaintiff was seen by Nurse Darlene Sexton on that day. Id. ¶ 41. The following day, Plaintiff was examined by Defendant Nurse Kathleen Skinner, who documented that Plaintiff now had "several golf-ball-size lumps" and "suspicious lesions." Id. ¶ 42. Plaintiff told Nurse Skinner that she was "concerned and want[ed] to see the M.D." Id. Nurse Skinner's request indicated that Plaintiff should see a doctor within seven days. Id. Two days later, Plaintiff was seen by Defendant Nurse Regina Jones and Defendant Donique Ivery, A.P.N and pain medications and a bilateral ultrasound for her breasts were ordered. Id. ¶ 43. The ultrasound, which was not performed until several weeks later, uncovered two irregular nodules in Plaintiff's left breast. Id. ¶ 44. Clinical correlation as to malignancy was recommended. Id.

On December 12, 2007, an entry was made on Plaintiff's medical chart indicating that "a surgical consult" has been requested for her left breast. Id. ¶¶ 46, 50. Dr. Schrager indicated that there was "concern for carcinoma." Id. ¶ 53. A biopsy was finally performed on March 10, 2008, and Plaintiff was diagnosed with breast cancer. Id. ¶ 56. On April 4, 2008, an oncology consult was

performed by Dr. Abdul Mughal, who confirmed the diagnosis and scheduled several chemotherapy cycles. Id. ¶ 59. Three weeks later, Dr. Nenita McIntosh performed a hematology/oncology consult and recommended that Plaintiff (a) complete the four cycles of chemotherapy (at that point, there were two sessions left); (b) undergo PET and CT scans; (c) be evaluated by a surgeon; and (d) obtain a radiation oncology consult. Id. ¶ 60.

Plaintiff was transferred from NJSP back to EMCF on May 29, 2008. Id. ¶ 61. On or about July 2, 2008, Plaintiff again had a consult with Dr. Schrager, who recommended that she have her left breast removed. Id. ¶ 62. Plaintiff underwent a mastectomy on July 23, 2008. Id. ¶ 63. Throughout the Fall and early Winter of 2008, it was directly recommended by the expert consultant that Plaintiff receive aggressive and timely chemotherapy. Id. ¶ 64.

### B. GRIEVANCE PROCEDURES

In accordance with N.J.A.C. 10A:8-1.1 to -3.6, NJSP and EMCF have adopted Inmate Handbooks, which set forth the rights and privileges of their respective inmates. Def.'s Statement of Material Facts ¶ 9, ECF No. 35-2. The Inmate Handbooks explain the administrative remedy procedures that have been established to give the inmate populations a way to bring complaints, problems, and suggestions to the attention of prison administrators. Id. ¶ 10. Inmate Remedy System Forms are available to inmates within their housing units and the law library, and may be obtained from unit social workers. Id. ¶ 11. When an inmate completes and submits a form, it is given to the appropriate staff person for a response. Id. ¶ 12. Once the inmate receives a response he or she has the opportunity to appeal. Id. ¶ 13. A response to the inmate's appeal results in the exhaustion of the inmate's remedies. Id. ¶ 14. Plaintiff never filed an administrative remedy form

at NJSP or EMCF to complain of problems accessing or receiving medical treatment. Id. ¶ 15. She

did, however, file administrative remedy forms regarding two other concerns that she had during her

period of incarceration. See, e.g., Pl.'s Statement of Additional Material Facts ¶ I, ECF No. 44-2.

## II. <u>APPLICABLE LAW</u>

### A. STANDARD OF REVIEW

"A court reviewing a summary judgment motion must evaluate the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor." <u>Gaston</u>

<u>v. U.S. Postal Serv.</u>, 319 Fed. Appx. 155, 157 (3d Cir. 2009).  However, "[t]he judgment sought

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c)(2).

Generally, "[a] party against whom relief is sought may move, with or without supporting

affidavits, for summary judgment on all or part of the claim" at any time "until 30 days after the

close of all discovery." Fed. R. Civ. P. 56(b), (c).  "[T]he burden on the moving party may be

discharged by 'showing'— that is, pointing out to the district court — that there is an absence of

evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317, 325

(1986).   "[R]egardless of whether the moving party accompanies its summary judgment motion

with affidavits, the motion may, and should, be granted so long as whatever is before the district

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c),

is satisfied." <u>Id.</u> (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,]
> an opposing party may not rely merely on allegations or denials in its own pleading;
> rather, its response must—by affidavits or as otherwise provided in this rule—set out

> specific facts showing a genuine issue for trial. If the opposing party does not so
> respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). If "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the Prison Litigation Reform Act of 1995 (the "PLRA"), a prisoner may not bring an action "with respect to prison conditions under [section 1983], or any other Federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88, 90-91 (2006). The exhaustion requirement is absolute and applies "even where the relief sought—money damages—cannot be granted by the administrative process." Id. at 85.

The PLRA's exhaustion requirement applies to all actions brought by inmates "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, compliance with grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook must be exhausted, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint, and set forth a number of arguments as to why Plaintiff's claims must fail. First, they assert that Plaintiff has failed to exhaust her administrative remedies. As the Court agrees with Defendants' argument on this point, it need not consider Defendants' additional arguments.

Failure to file complaints in accordance with a prison's formal grievance procedure constitutes a failure to exhaust administrative remedies. Compliance with the grievance process applies to all aspects of complaints regarding prison life, including medical treatment. Porter, 534 U.S. at 532. Here, there is no question that Plaintiff did not follow the required prison grievance procedure; instead, she simply filed requests to see medical staff, which did not amount to exhaustion of administrative remedies.

Mayne v. DiMarco, is factually similar to this case. There, the court dismissed plaintiff's complaint, wherein he alleged that prison officials "deliberately ignore[d] his medical complaints and requests to be seen by a doctor," because he had failed to exhaust all administrative remedies. No. 06-35902007 U.S. Dist. LEXIS 52307, at *3 (D.N.J. July 17, 2007). Namely, plaintiff "did not

present any evidence that he, in fact, filed other medical grievances or appealed his treatment in accordance with the Inmate Grievance Procedure." Id. at *12. As the court explained, "[u]nder the Inmate Grievance Procedure, if [the plaintiff] was still dissatisfied with the medical diagnosis or treatment that he was receiving, he was required to appeal to the Grievance Committee and then to the Jail Administrator before filing with the court." Id.; see also Salvador v. Brown, No. 04-3908, 2005 U.S. Dist. LEXIS 36387, at *16-17 (D.N.J. Aug. 24, 2005) (entering summary judgment against plaintiff because he failed to follow grievance procedures in Inmate Handbook and therefore had not exhausted his administrative remedies).

Plaintiff asserts that her federal claims should not be dismissed for failure to exhaust because: (1) she "utilized the remedies that were available to her, and followed procedures that she was instructed and educated upon"; (2) there were "inconsistencies" and a "lack of clarity" in the NJDOC's Inmate Handbooks with respect to the grievance process; and (3) "special circumstances" here should excuse Plaintiff's failure to utilize the grievance process. Pl.'s Mem. Opp'n Mot. Dismiss 1-2, ECF No. 44.

First, as a number of Courts have emphasized, it is critical that a prisoner participate in a prison's internal process—indeed, participation up to the conclusion of the process is required. Harvey v. Brown, No. 06-1891, 2010 U.S. Dist. LEXIS 5816, at *9 (D.N.J. Jan. 25, 2010) ("A prisoner does not satisfy the exhaustion requirement by complaining verbally in lieu of bringing a formal grievance under a prison's established grievance procedure."); Mayne, 2007 U.S. Dist. LEXIS 52307, at *12-13 (discussing the necessity that prisoners fully exhaust internal grievance procedures); Salvador, 2005 U.S. Dist. LEXIS 36387, at *14-18 (noting that failure to raise an issue within the prison complaint process necessitates dismissal of federal claims); Williams v. Monmouth County

<u>Sheriff's Dep't Med. Dep't of Monmouth County Jail</u>, No. 04-4952, 2005 U.S. Dist. LEXIS 29266, at *9-10 (D.N.J. Nov. 21, 2005) (dismissing plaintiff's complaint because "even if Plaintiff provided evidence that [h]e completed medical slips and informed the supervisor of his grievance, there is no indication that he complied with the remaining steps (steps C-E) of the grievance procedure"); <u>see also</u> <u>George v. Hogan</u>, No. 1:06-cv-01554, 2008 U.S. Dist. LEXIS 25710, at *21 (M.D. Pa. Mar. 31, 2008), <u>aff'd</u>, 319 Fed. Appx. 134 (3d Cir. 2009) (noting that Plaintiff was undoubtedly aware of the grievance process and that "[s]ubmitting two medical request forms to medical department staff members does not represent 'substantial' compliance with YCP's grievance procedures"); <u>Simpson v. CMS</u>, 559 F. Supp. 2d 481, 483 (D. Del. 2008) (rejecting Plaintiff's argument that she exhausted her administrative remedies where, despite being aware of a formal grievance procedure, she merely "put in medical slips" requesting medical treatment). Here, there is no question that Plaintiff failed to do so.

Second, Plaintiff's assertion that the grievance procedures are unclear is unfounded. She argues that:

> On its face, the provision pertaining to the "Inmate Request and Remedy Form System" from the Inmate Handbook for Prisoners at NJSP, emphasizes that this form "does not replace the ordinary forms submitted to respective departments under ordinary circumstances." Indeed, the provision from the Handbook emphasizes that the form "is to be used only for requests or complaints that have not been handled through regular procedures."

Pl.'s Statement of Additional Material Facts ¶ L, ECF No. 44-2. (emphasis removed). The Handbook states that the grievance procedure does not replace the regular method of seeking medical treatment or advice (i.e., submission of medical slips). Furthermore, where a request has "not been handled through the regular procedures" (as Plaintiff alleges happened here), then an individual may properly

-9-

invoke the grievance procedure. Plaintiff here, after her requests were allegedly ignored, did not file any such grievance. Moreover Plaintiff was clearly aware of the Inmate Grievances Process, as she had invoked it on several occasions to deal with non-medical concerns. Her argument that she misunderstood the grievance procedures, then, cannot excuse her failure to exhaust administrative remedies. Miller v. Schuylkill County Prison, No. 1:CV-07-0331, 2007 U.S. Dist. LEXIS 83495, at *2-3 (M.D. Pa. Nov. 9, 2007) ("Miller's second objection contends that he could  not exhaust administrative remedies because he was not given, nor was he aware of, the SCP Inmate Grievance Policy. This objection is also unavailing [as] . . . an inmate's subjective lack of awareness regarding administrative remedies will not excuse compliance.").

Third, Plaintiff asserts that there are exceptional circumstances that justify excusing her failure to exhaust. The exhaustion requirement is excused only in the rarest of cases, such as where a prison official gives a prisoner "erroneous" or "misleading" instructions as to grievance procedure. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002); see Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (remanding judgment in favor of defendants for plaintiff's failure to exhaust his administrative remedies because plaintiff put forth evidence that prison officials misled him as to grievance procedure); Born v. Monmouth County Corr. Inst., No. 07-3771, 2008 U.S. Dist. LEXIS 66181, at *12 (D.N.J. Aug. 28, 2008); Ortiz v. Hayman, No. 06-4730, 2008 U.S. Dist. LEXIS 29524, at *10 (D.N.J. Apr. 10, 2008) (recognizing that "if a defendant's own actions prevent a prisoner from pursuing administrative procedures, the prisoner's failure to avail himself of those remedies cannot bar his access to the courts") (internal quotations omitted). In such cases, assertions that prison officials provided misinformation create a factual issue as to whether any administrative remedies were actually made "available" to a plaintiff. Brown, 312 F.3d at 112-13.

Here, there is no indication that Plaintiff was somehow misled into foregoing the prison grievance procedure. Plaintiff asserts that she "was told by the Correction Officers that if she needed medical care, she would need to fill out medical request forms." Pl.'s Mem. Opp'n Mot. Dismiss 5, ECF No. 44. This assertion, even if taken as true, does not indicate that Defendants prevented Plaintiff from participating in the process. There is no question that medical request forms are the typical route to getting medical care—the issue here, however, is Plaintiff's complaints regarding the delay in receiving treatment. Accordingly, the fact that Plaintiff filled out "numerous" medical slips, and "complained to the nurses about her medical requests being ignored" does not indicate that she was prevented from filing a grievance. See Cerome v. Moshannon Valley Corr. Ctr., No. 3:07-cv-77-KRG-KAP, 2009 U.S. Dist. LEXIS 127854, at 10-11 (W.D. Pa. Mar. 5, 2009) ("Where the prisoner alleges that he did not exhaust the administrative grievance system because it was futile due to interference by the prison administration he bears the burden of proving that interference." (citing Turner v. Burnside, 541 F.3d 1077 (11th Cir.2008))).

Although this Court certainly does not condone any delay in providing prisoners with medical treatment—particularly when they are suffering from life threatening diseases—prisoners are required to follow and exhaust the administrative procedures provided to them. There is a good reason for this: prison administration has an opportunity to provide some form of relief (i.e., policy modification) only after it is presented with a formal complaint. See Woodford, 548 U.S. at 90 ("[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection . . . ." (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952))); John W. Palmer, Constitutional Rights of Prisoners § 13.3.3.1 at 400-01 (8th ed. 2006) (observing that requiring administrative exhaustion "reduces the

quantity of prisoner suits and improves the quality of the suits that are filed."). Indeed, presentation of a complaint via administrative avenues is particularly important where, as here, Plaintiff alleges that she suffered harm as a result of the prison system's ongoing policy of discrimination.

In accordance with the PLRA, failure to exhaust administrative remedies necessarily requires that a plaintiff's federal claim be dismissed. See Spruill, 372 F.3d at 230.

## IV. CONCLUSION

For the reasons stated, Defendants' motion seeking dismissal and summary judgment of Plaintiff's federal claims is **granted**. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[2]

Dennis M. Cavanaugh, U.S.D.J.

Date:      September 13, 2010
Orig.:      Clerk
cc:          All Counsel of Record
               Hon. Joseph A. Dickson, U.S.M.J.
               File

---

[2] See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999); 28 U.S.C. § 1367(c)(3) (noting that a Court may dismiss state law claims where the "the district court has dismissed all claims over which it has original jurisdiction."